IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 24-cv-01114-GPG

RICHARD REID,

    Applicant,

v.

MR. A. CIOLLI,
MR. ENGLISH,
MR. A. MATEVOUSIAN, and
MRS. C. PETERS,

    Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

    This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (D. 1) (the "Application") filed *pro se* by Applicant, Richard Reid, on April 22, 2024. On May 20, 2024, Respondents were ordered to show cause why the Application should not be granted. On June 20, 2024, Respondents filed a Response to Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (D. 23). On July 25, 2024, Mr. Reid filed a reply (D. 25).

    The Court must construe the Application and other papers filed by Mr. Reid liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. After reviewing the pertinent portions of the record in this case, the Court FINDS and CONCLUDES that the Application should be denied and the case dismissed with prejudice.

# I. BACKGROUND

Mr. Reid is a prisoner in the custody of the Federal Bureau of Prisons ("BOP"). He was convicted in the United States District Court for the District of Massachusetts and sentenced to life in prison. He also was ordered to pay restitution and a fine. Regarding the restitution and fine, the Judgment in Mr. Reid's criminal case provides that the total amount of $256,882.17 is due immediately, and that any balance is to be paid as directed by probation. (*See* D. 1 at p.44.) The Judgment also provides that "payment of criminal monetary penalties shall be due during the period of imprisonment" and "[a]ll criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney." (*Id.*)

Mr. Reid's claims in the Application relate to payments he is being asked to make under the Inmate Financial Responsibility Program ("IFRP") while incarcerated. Mr. Reid alleges he made payments under the IFRP of $25.00 per quarter for more than twenty years when he had sufficient funds, but that changed in December 2022 when he was asked to pay $35.00 per month, an amount that he alleges violated the relevant federal regulations and BOP Program Statement. Mr. Reid contends he initially refused to make the $35.00 monthly payments, he subsequently agreed under duress to make the payments, he made monthly payments until the funds in his inmate account were depleted, and his IFRP payments were reduced to $35.00 per quarter. The record before the Court shows that, on May 2, 2024, Mr. Reid signed a new Inmate Financial Plan that further reduced his IFRP payments to $25.00 per quarter. (*See* D. 23-1 at p.5.)

Mr. Reid first claims the BOP has unlawfully and arbitrarily created a schedule of

restitution payments that is not authorized by the sentencing court. In claim two he contends he has been required to make IFRP payments greater than authorized by the applicable federal regulations and BOP Program Statement, and that exceed his ability to pay. As explained further below, the Court construes claim one as an improper delegation claim, and claim two as challenging the computation of his IFRP payments. As relief Mr. Reid asks that Respondents be directed to cease collection of illegal IFRP payments and place him on temporary exemption status until a proper payment schedule is developed by the Court. Mr. Reid also asks that Respondents be ordered to comply with the applicable regulations and Program Statement in calculating IFRP payments, or that a cap be placed on his IFRP payments, and that he not be subjected to any punitive measures for failing to make payments not authorized under the IFRP.

## II. DISCUSSION

The purpose of the IFRP is to "encourage[] each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. "When an inmate has a financial obligation, unit staff shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation." 28 C.F.R. § 545.11. Court-ordered restitution and fines are among the financial obligations covered by the IFRP. *See* 28 C.F.R. § 545.11(a)(2), (3). Payment plans are reviewed periodically and can be adjusted. *See* 28 C.F.R. § 545.11(c).

"The inmate is responsible for making satisfactory progress in meeting his/her financial responsibility and for providing documentation of these payments to unit staff." 28 C.F.R. § 545.11(b). "Payments may be made from institution resources or non-institution (community) resources." *Id.* Participation in the IFRP is voluntary, but there are consequences for refusing to participate or to comply with the provisions of an inmate's financial plan. *See* 28 C.F.R. §

3

545.11(d). These consequences include: notification to the Parole Commission; ineligibility for any furlough; ineligibility for performance pay above the maintenance pay level, or bonus pay, or vacation pay; ineligibility for assignment to a work detail outside the facility; ineligibility for placement in UNICOR; restricted monthly commissary spending; placement in the lowest housing status; ineligibility for placement in a community-based program; ineligibility for a release gratuity; and ineligibility for an incentive for participation in residential drug treatment programs. *See id*.

As noted above, the Court construes Mr. Reid's claims as challenging the authority of the BOP to apply the IFRP to him (improper delegation claim) as well as the BOP's computation of his IFRP payments. To the extent the Application also could be construed as challenging the constitutionality of the IFRP, any such claim lacks merit. The IFRP "serves valid penological interests and is fully consistent with the Bureau of Prisons' authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation." *Johnpoll v. Thornburgh*, 898 F.2d 849, 850, 851 (2d Cir. 1990) (per curiam). Thus, "[e]very court to consider a challenge to the IFRP's constitutionality has upheld it." *Davis v. Wiley*, 260 F. App'x 66, 68 (10th Cir. 2008); *see also O'Banion v. Matevousian*, 835 F. App'x 347, 350 (10th Cir. 2020). "In sum, the BOP is . . . within its constitutional authority to establish and enforce payment amounts [Applicant] must make towards the court-ordered . . . restitution." *Davis*, 260 F. App'x at 69. This is so because "the benefits that can be denied [under the IFRP] are not constitutionally guaranteed" and inducements to participate in the IFRP "do not infringe on a prisoner's protected liberty interest." *Id.* (cleaned up).

### A. Cognizable Habeas Corpus Claims

Respondents first argue that Mr. Reid's claims are not cognizable habeas corpus claims because he is not challenging the fact or duration of his custody. The Court is not persuaded because, although unpublished, Tenth Circuit caselaw supports the conclusion that a federal prisoner's claims challenging the constitutionality of the IFRP and enforcement of the IFRP against him may be raised in a habeas corpus action under § 2241. *See, e.g., Dade v. Sanders*, 510 F. App'x 714, 717 n.5 (10th Cir. 2013); *see also Wallette v. Wilner*, 321 F. App'x 735, 738 (10th Cir. 2009) ("Because a challenge to the BOP's authority to set restitution payment terms goes to the execution of [petitioner's] sentence, this claim falls within those properly raised in a petition for habeas corpus under § 2241."); *Davis*, 260 F. App'x at 68 & n.2 (claim challenging "the BOP's authority under the IFRP to establish and enforce payment amounts [the petitioner] must follow in connection with the court-ordered special assessment and restitution" was "properly raised in a § 2241 petition" because it "attack[ed] the execution of [the petitioner's] sentence").

### B. Claim One

Mr. Reid first claims prison officials have unlawfully and arbitrarily created a schedule of restitution payments that is not authorized by the sentencing court. In a nutshell, in claim one

> Applicant Reid contends that the absence of a detailed payment schedule from the sentencing court which sets a minimum and maximum cap on his monthly or quarterly restitution payment[s] has allowed BOP/ADX administrative officials . . . to arbitrarily and capriciously enforce IFRP payments against Applicant Reid in a malicious manner, making him make payments that are over and above his quarterly or even yearly income.

(D. 1 at p.11.) The focus of claim one is an improper delegation argument premised on 18 U.S.C. § 3664. (*See id.* ("Various U.S. district courts have granted . . . 28 U.S.C. 2241 motions on the grounds that 18 U.S.C. 3664 (MVRA) prohibits sentencing courts to leave details of scheduling

for court imposed financial obligations to the B.O.P. or the probation officer.").) To the extent Mr. Reid is contending in claim one that the amount of his IFRP payments exceeds or has exceeded his monthly and annual income, those contentions are repeated in claim two and are discussed below.

According to Mr. Reid, § 3664 prohibits sentencing courts from delegating the responsibility to establish a payment schedule to the BOP, and the Judgment in his criminal case "directs him to pay his fines and restitution through the IFRP." (D. 25 at p.11.) As noted above, the Judgment provides in relevant part that the total amount is due immediately, that any balance is to be paid as directed by probation, and that payment is due during the period of imprisonment. Mr. Reid interprets the Judgment as delegating full discretion to the BOP because he is serving a life sentence and will never be on probation.

Under 18 U.S.C. § 3664(f)(2), "the [sentencing] court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." Mr. Reid is correct that § 3664 does not permit a sentencing court to delegate to the BOP the task of establishing a schedule for the payment of court-ordered restitution. *United States v. Overholt*, 307 F.3d 1231, 1255-56 (10th Cir. 2002). However, the Court lacks jurisdiction to consider Mr. Reid's improper delegation claim because that claim challenges the validity of the sentencing court's restitution order. *See Wallette,* 321 F. App'x at 738 ("To the extent Wallette's improper delegation claim implicates the validity of his sentence, we lack jurisdiction to entertain a challenge to the sentencing court's restitution order."); *Davis*, 260 F. App'x at 68 (same). Instead, any claim challenging the validity of the sentencing court's restitution order must be raised in the sentencing court. Therefore, Mr. Reid is not entitled to relief in this habeas corpus action with respect to claim

one.

In any event, even if the Court could consider Mr. Reid's improper delegation argument, the Court would conclude the argument lacks merit because the sentencing court's order does not require Mr. Reid to participate in the IFRP. In *Overholt*, the sentencing court impermissibly delegated to the BOP the task of establishing a restitution payment schedule by ordering an indigent defendant to pay restitution immediately, and to pay any unpaid balance "while in custody through the Bureau of Prisons' Inmate Financial Responsibility Program." *Overholt*, 307 F.3d at 1255. Because the sentencing court knew the full amount of the restitution order could not be paid immediately, "it was essentially delegating the preparation of a payment schedule to the Bureau of Prisons." *Id.* Here, there is nothing in the sentencing court's order that requires Mr. Reid to participate in the IFRP while incarcerated. Thus, the sentencing court did not impermissibly delegate its responsibility to the BOP. *See United States v. Elwood*, 757 F. App'x 731, 734 & n.2 (10th Cir. 2018) (rejecting improper delegation argument and distinguishing *Overholt* because the sentencing court's recommendation that Elwood make restitution payments through the IFRP while in prison did not compel his participation).

**B. Claim Two**

Claim two relates to the amount of the IFRP payments Mr. Reid has been asked to make since December 2022. Mr. Reid alleges he made payments of $25.00 per quarter for more than twenty years prior to December 2022 when he had sufficient funds and he does not take issue with those payments. As noted above, beginning in December 2022 Mr. Reid agreed (allegedly under duress) to make payments of $35.00 per month, the payments were later reduced to $35.00 per quarter, and his current payments are $25.00 per quarter. According to Mr. Reid, he should have

been exempt from making any IFRP payments for much of the time since December 2022 because he did not have any deposits into his inmate account and 28 C.F.R. § 545.11(b) excludes $75.00 in deposits per month from IFRP payment calculations. He also contends he should be exempt from making IFRP payments whenever he receives less than $600.00 in his inmate account over any six-month period.

The relevant federal regulation provides as follows with respect to how an inmate's payments under the IFRP are calculated:

> In developing an inmate's financial plan, the unit team shall first subtract from the trust fund account the inmate's minimum payment schedule for UNICOR or non-UNICOR work assignments, set forth in paragraphs (b)(1) and (b)(2) of this section. The unit team shall then exclude from its assessment $75.00 a month deposited into the inmate's trust fund account. This $75.00 is excluded to allow the inmate the opportunity to better maintain telephone communication under the Inmate Telephone System (ITS).

28 C.F.R. § 545.11(b). Subsection (b)(1) provides that the minimum payment for non-UNICOR inmates like Mr. Reid ordinarily will be $25.00 per quarter, and may exceed $25.00 per quarter depending on "the inmate's specific obligations, institution resources, and community resources."

BOP Program Statement 5380.08 provides additional guidance. The Program Statement provides in relevant part as follows:

> At each program review, when reviewing the inmate's financial plan, the Unit Team must:
>
> • determine the total funds deposited into the inmate's trust fund account for the previous six months;
>
> • subtract the IFRP payments made by the inmate during the previous six months; and
>
> • subtract $450 (i.e., $75 x 6 months, ITS exclusion).
>
> Any money remaining after the above computation may be considered for

> IFRP payments, regardless of whether the money is in the inmate's trust fund or phone credit account. The Unit Team has the discretion to consider all monies above that computation to adjust the inmate's IFRP payment plan.
>
> The Unit Manager is the determining authority when it comes to deciding whether an inmate's IFRP payments are commensurate with his/her ability to pay. This decision is solely at the discretion of the Unit Manager and is to be decided on a case-by-case basis. Variations in what is considered a commensurate payment are expected and are appropriate since the determination of commensurate payments is based on individual circumstances.

BOP Program Statement 5380.08 at p.8. The Program Statement also provides a "Temporarily Exempt from Participation" IFRP assignment. The "Temporarily Exempt from Participation" IFRP assignment is

> for an inmate who is unable to participate adequately toward satisfaction of the obligation, ordinarily because of medical or psychological restrictions which prevent the inmate from working. This assignment is at the Unit Team's discretion and may also be used for an inmate who is unable to secure employment in UNICOR or advance beyond maintenance pay due to conditions beyond the inmate's control (overcrowding, institution need, limited financial resources, special circumstances, etc.).

*Id.* at p.15.

Mr. Reid's arguments regarding the methodology for calculating his IFRP payments and asking the Court to interfere with the BOP's discretion in implementing the IFRP do not demonstrate he is entitled to relief. In short, absent a constitutional problem, which Mr. Reid does not assert, the Court lacks authority to review the BOP's discretion in setting IFRP payments. In this regard, the Court agrees with Judge Posner in the Seventh Circuit:

> The Attorney General rather than the courts shall be responsible for collection of an unpaid fine or restitution imposed by a judgment, 18 U.S.C. § 3612(c), and he has delegated his authority to the Bureau of Prisons, 18 U.S.C. § 4042(a)(1), which created the Inmate Financial Responsibility Program to facilitate collection. This delegation is proper, and the courts are not authorized to override the Bureau's discretion about such matters, any more than a judge could dictate particulars about a prisoner's meal schedule or recreation (all constitutional

problems to the side).

*In re Buddhi*, 658 F.3d 740, 742 (7th Cir. 2011) (cleaned up). Oher courts have reached the same conclusion. *See Scott v. Wilson,* No. 3:16CV804, 2018 WL 1144586, at *7 (E.D. Va. Mar. 2, 2018) ("BOP officials are granted extensive discretion to consider an inmate eligible and able to enroll in the IFRP and . . . Scott fails to demonstrate that this Court has the authority to review the amount the BOP collects from him under the IFRP."); *Pontefract v. Walton*, No. 14-cv-1089-DRH, 2014 WL 5543190, at *2 (S.D. Ill. Nov. 3, 2014) ("The Court does not have authority to interfere with the BOP's discretion in its administration of the IFRP program."). And if Mr. Reid does not agree with the methodology used by prison officials to calculate his IFRP payments, the Court reminds him that participation is voluntary.

In any event, it does not appear that the amounts Mr. Reid has been asked to pay are improper. As noted above, he currently has agreed to pay $25.00 per quarter, which is the minimum amount to participate in the IFRP. *See* 28 C.F.R. § 545.11(b)(1). And contrary to Mr. Reid's arguments, an inmate's IFRP payments can be higher than the minimum amount depending on the inmate's individual circumstances and are not determined solely based on deposits into the inmate's account. *See id.* (the minimum payment may be increased depending on "the inmate's specific obligations, institution resources, and community resources"). The record before the Court also demonstrates Mr. Reid has not missed an IFRP payment since December 2022. Thus, even when he was paying more than $25.00 per quarter, it is apparent that he had sufficient resources to make the requested payments and participate in the IFRP.

For these reasons, Mr. Reid also is not entitled to relief with respect to claim two.

### III. CONCLUSION

In summary, the Court finds that Mr. Reid is not entitled to relief and the Application will be denied. Mr. Reid's "2nd Motion to Appoint Counsel" (D. 22) filed June 3, 2024, will be denied because Mr. Reid's claims are not particularly complex and he has demonstrated he is capable of presenting and arguing the merits of his claims. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).

Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (D. 1) is denied and this case is dismissed with prejudice. It is further

**ORDERED** that Applicant's "2nd Motion to Appoint Counsel" (D. 22) is denied.

DATED November 12, 2024.

BY THE COURT:

GORDON P. GALLAGHER
United States District Judge